UNITED STATES DISTRICT COURT
EASTERN DISRICT OF NEW YORK
-----------------------------------------------------------X
JEANINI TANSEY,

                            Plaintiff,

   -against-                                              13-CV-4628 (SJF) (SIL)

COCHLEAR LIMITED and COCHLEAR
AMERICAS CORPORATION,                            **ORDER**

                            Defendants.
-----------------------------------------------------------X

**LOCKE, Magistrate Judge:**

      Presently before the court in this products liability-negligence case is the motion of Defendant Cochlear Limited, an Australian company, to compel Plaintiff to use the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters ("Hague Convention") to obtain discovery rather than the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is denied.

*Background*

      The following facts are a summary of the allegations in this case, set forth solely for the purposes of deciding the present motion, and much of which is hotly contested. In September 2010, Plaintiff, a single mother living in Suffolk County, had a CI512 cochlear device implanted in her head to treat a profound hearing loss and deafness ("cochlear implant"). The cochlear implant was manufactured by Cochlear Limited, an Australian company with its principal place of business in New South Wales, Australia, and distributed by Cochlear Americas Corporation, a Delaware corporation with its principal place of business in Centennial, Colorado. Cochlear Americas is a wholly owned subsidiary of Cochlear Limited. Cochlear Limited does not sell or distribute any products in the United States or maintain plants, offices, mailing addresses, bank

accounts or commercial agents here. Further, all of its documents and records are maintained in Australia. Consistent with these facts, Cochlear Limited has filed a motion to dismiss on, <u>inter alia</u>, personal jurisdiction grounds, which is fully submitted and pending before the Court.

According to Plaintiff, Defendants deviated from mandatory FDA requirements when manufacturing and distributing her CI512 cochlear implant causing her substantial injury. Over time there were sufficient problems with these devices that recalls began in September 2011, with Plaintiff's device being recalled the following month. The recall was prompted by a variation in the soldering process that caused cracks to develop in the implants, in turn causing a loss of hermeticity, allowing fluids in that would short out the electrical components. Apparently, after the recall the devices were never returned to market. Although vigorously disputed by the parties, Plaintiff claims that these problems impacted her cochlear implant, which eventually had to be explanted from her head. This procedure caused Plaintiff to suffer major never damage and today she suffers from constant headaches, nausea, vertigo, deafness, facial palsy and damage to her eyes. She is unable to walk without a walker, must keep one eye patched, is heavily medicated, lost her job, is unable to work or drive and has been determined to be totally disabled by the Social Security Administration.

***The present motion***

On June 5, 2014, Plaintiff served her First Request for Production of Documents containing 58 document requests, some with subparts. According to Defendants, these requests are "extraordinarily broad, not reasonably limited in time, and focus[] upon an already debunked theory of product defect." In short, the requests are nothing more than a "fishing expedition" that the court should not countenance. Further, these requests create a "potential risk" for Cochlear Limited, implicating Australia's Privacy Act of 1988, which restricts dissemination of personal

information for a purpose other than the purpose for which the information was first obtained. Defendants' solution is to compel Plaintiff to seek discovery through the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, rather than the Federal Rules of Civil Procedure, because the Hague Convention has more stringent requirements, as a way of balancing between Plaintiff's need for discovery and Defendants' need to avoid abusive, excessive and unreasonable discovery requests. The net effect of such an order would compel Plaintiff to seek discovery by serving a letter of request on the appropriate agent in Australia, who would review it for the purposes of assuring compliance with Australian law before issuing an appropriate order.

*Analysis*

It is "beyond cavil" that the Hague Convention, which was ratified by the United States in 1972 and Australia in 1992, is not the exclusive mechanism for obtaining discovery from a foreign entity. In re Vivendi Universal, SA Sec. Litig., 02 Civ. 5571 (RJH) (HBP), 2006 WL 3378115 *2 (S.D.N.Y. Nov. 16, 2006); see Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 530 (1987) (Hague Convention ratified by the United States in 1972); Harris & Harris, Obtaining Evidence in Australia for Use in the United States and Other Hague Convention Countries, 73 Def. Counsel J. 235 (2006) (Australia ratified the Hague Convention in 1992) ["Harris & Harris"] . Rather, the Hague Convention was intended as a supplementary device for obtaining evidence located abroad. Societe Nationale, 482 U.S. at 534-35 ("The preamble of the Convention specifies its purpose 'to facilitate the transmission and execution of Letters of Request' and to 'improve mutual judicial co-operation in civil and commercial matters,'"—it "does not speak in mandatory terms which would purport to describe the procedures for all permissible transnational discovery and exclude all other existing practices");

First Amer. Corp., v. PriceWaterhouse LLP, 154 F.3d 16, 21 (2d Cir. 1998). These "optional Convention procedures are available whenever they will facilitate the gathering of evidence by means authorized in the Convention." Societe Nationale, 482 U.S. at 541. When deciding whether to apply the Hague Convention, courts are also mindful that the letter of request procedure authorized by the Convention may, in certain circumstances, be "unduly time consuming and expensive, as well as less certain to produce the needed evidence than direct use of the Federal Rules." Id. at 542. Accordingly, because under the Convention a letter of request must specify "the evidence to be obtained or other judicial act to be performed," and because the party seeking discovery "may find it difficult or impossible to determine in advance what evidence is within the control of the party urging resort to the Convention and which parts of that evidence may qualify for international judicial assistance . . . [t]he district court may . . . require . . . that this party bear the burden of providing . . . detailed descriptions of relevant documents that are needed to assure prompt and complete production pursuant to the terms of the Convention." Id. at 546 n.30. Further, in such situations, application of Federal Rules of Civil Procedure may be more appropriate. First Amer., 154 F.3d at 23 ("Because First American very plausibly contends that such specificity is impossible in the present case, the Hague Convention would prove an ineffective tool for First American's purposes").

In deciding whether discovery should proceed under the Hague Convention rather than the Federal Rules of Civil Procedure, American courts should consider any special problems confronted by a foreign litigant on account of nationality, location of operations, or any sovereign interest at issue. Societe Nationale, 482 U.S. at 546 ("When it is necessary to seek evidence abroad . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses"). In the Second Circuit, the factors to consider have been articulated as follows: (1) the

importance to the litigation of the information requested; (2) the degree of specificity of the requests; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the requests would undermine important interests of the country where the information is located; (6) the hardship that compliance would impose on the party from whom information is sought; and (7) the good faith of the party resisting production. Linde v. Arab Bank, PLC, 706 F.3d 92, 109-10 (2d Cir. 2013); In re Air Cargo Shipping Servs. Antitrust Litig., 06-MD-1775, 2010 WL 2976220 *1 (E.D.N.Y. July 23, 2010); see also In re Air Cargo Shipping Servs Antitrust Litig., 278 F.R.D. 51, 52 (E.D.N.Y. 2010) (citing Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c) (1987)) (listing factors and collecting cases). Another factor courts sometimes consider is whether the person from whom discovery is sought is a party to the litigation, which is the case here. See First Amer. 154 F.3d at 21 ("PW-UK is on firmer ground in urging that its non-party status is a consideration in the comity analysis"). Where the issue is the application of another country's privacy laws, courts will consider whether such privacy requirements are absolute. Id. at 22.

The burden of persuasion is on the party seeking application of the Hague Convention. Eikenberry v. Celsteel Ltd., 13 Civ. 4661(AT), 2013 WL 5308028 *4 (S.D.N.Y. Sept. 19, 2013); Vivendi Universal 2006 WL 3378115 at *2 ("The party seeking to displace the Federal Rules of Civil Procedure in favor of the Hague Convention bears the burden of demonstrating that it is more appropriate for the Court to follow the Hague Convention") (collecting cases).

Applying these factors, Defendants have failed to meet their burden. Initially, it is clear that the information sought is important to this litigation and that the requests are sufficiently specific to proceed under the Federal Rules of Civil Procedure. Indeed, it is hard to envision how

Plaintiff could prove her claims without access to the information she seeks. Her requests are for information concerning herself, her cochlear implant and documents concerning, <u>inter alia</u>, defects in the CI500 series implants (of which the CI512 was one), explant of these devices, and communications with the FDA in order to address FDA Premarket Approval and Current Good Manufacturing Practices regarding this series of implants. While there may be validity to Defendants' arguments that some of the document requests are overbroad, this argument does not render the documents sought unimportant or the requests lacking sufficient specificity. The better approach to address this issue is by means of objections to specific requests followed by the meet and confer process required by Local Civil Rule 37.3, and then if necessary motion practice addressed to specific objectionable requests.

With respect to the location of the information sought, it appears that at least a large portion of the information is maintained in Australia. It is important to note however, that when this factor was set forth by the Supreme Court in <u>Societe Nationale</u> in 1987, movement of documents from other parts of the world was not accomplished electronically the way it is today, which now limits or eliminates much of the attendant costs, both in terms of the time and money associated with producing remotely located evidence. Accordingly, while this factor weighs in Defendants' favor, it is of limited benefit to this analysis.

In terms of alternative means of obtaining this information, the Court is skeptical that any exist. There is no evidence that the information sought is located anywhere but with Defendants in Australia. Although Defendants argue that the use of letters of request issued via the Hague Convention would be sufficient to obtain the necessary evidence, the Court disagrees for several reasons. Initially, the letters of request require that the documents sought be specifically identified, as opposed to being identified by category or description, which is the typical method applied

under the Federal Rules of Civil Procedure. Yet here, there is likely no way for Plaintiffs to accomplish this as all of the documents appear to be solely within Cochlear Limited's possession. While the Court could direct Defendants to first describe the relevant documents in their possession, see Societe Nationale, 482 U.S. at 546 n.30, the constant discovery motion practice in this case militates against going this route. Further, although neither side has produced expert evidence concerning Australian law, it appears that Australia would not honor a letter of request directed toward obtaining pretrial discovery in any event. At least one set of commentators has noted that Australian courts will not comply with letters of request "solely" seeking "pre-trial discovery." The evidence "must be sought for use or possible use at trial," a more rigid standard for discovery than Federal Rule 26(b)(1), which permits discovery of evidence "reasonably calculated to lead to the discovery of admissible evidence." Compare Harris & Harris, supra, with Fed. R. Civ. P. 26(b)(1); see also http://www.hcch.net/index_en.php?act=status.comment&csid=485&disp=resdn (Australia invokes Articles 23 of the Hague Convention stating it will not execute letters of request for the purpose of obtaining pre-trial discovery of documents); accord Pickles & Ors v. Gratzon & Ors [2002] NSWSC ¶ 79 (recognizing that the court may not order pre-trial discovery). Although Defendants argue that this distinction should be of no concern, they do without submission of any evidence concerning Australia's practices in this regard.

Further, even if Defendants had otherwise demonstrated that discovery via the Hague Convention was adequate, the process takes approximately six months, which would put the parties beyond the discovery deadline set for this case, with no guarantee of an extension given that a long deadline was set in the first instance because of the evidence being located in Australia as explained at the parties' initial conference. See Australia – Central Auth. (Art. 2), HCCH Authorities,

7

http://www.hcch.net/index_en.php?act=authorities.details&aid=485 (execution of the letters of request may take approximately six months).  Accordingly, the Court concludes that this argument is insufficient to satisfy its Defendants' burden of persuasion on this point.

The Court also concludes that Defendants have failed to carry their burden with respect to the balancing of the national interests at stake, a factor that at least some courts consider the most important to the analysis.  See In re Air Cargo Servs. Antitrust Litig., 278 F.R.D. at 54 ("weighing the factor considered most important by several courts confronting the issue").

On the one hand, it has been repeatedly recognized that the United States has an "obvious interest" in having its own procedural rules applied to discovery.  In re Vivendi Universal, 2006 WL 3378115 at *3; Reino De Espana v. American Bureau of Shipping, 03 Civ. 3573 (LTS)(RLE), 2005 WL 1813017 *4 (S.D.N.Y. Aug. 1, 2005) ("the United States has an undoubtedly substantial interest in fully and fairly adjudicating matters before its courts which is only possible with complete discovery") (internal quotation omitted).  Further, the interest is more pronounced when the evidence at issue is vital to the litigation.  See, e.g., Reino De Espana at *4 (describing the evidence at issue as "key," and the deprivation of which would put the parties on unequal footing and impede a full and fair adjudication on the merits).  And while it is true that the United States' interest may be more pronounced in cases involving the public interest, such as those involving allegations of material support to terrorists, these interests still carry weight in litigation between private parties.  See, e.g., Milliken & Co v. Bank of China, 758 F. Supp. 2d 238, 249-50 (S.D.N.Y. 2010) (applying these principles in a collection case and recognizing that in order for international business to operate efficiently commercial interests must be fully and fairly adjudicated and concluding that the Hague Convention need not be applied for discovery purposes).  This action

8

is pending in the United States and seeks to apply only local law.  Accordingly, the United States has an interest in the application of the Federal Rules of Civil Procedure.

On the other hand, Defendants argue that Australia has a contrary interest: "Of particular relevance to this case, Australia has implemented a privacy regime through enactment of the Privacy Act of 1988 . . . which applies to [Cochlear Limited, and] differs markedly from the United States," prohibiting disclosure of personal customer information.  This argument is notable for what it omits.  Initially, the courts recognize that "[g]enerally, sworn testimony or affidavits are preferable to support an argument that ordering discovery would violate foreign law."  NML Capital, Ltd. v. Republic of Argentina, 08-cv-2541 (TPG), 2013 WL 491522 *3 (S.D.N.Y. Feb. 18, 2013).  Further, "the Court notes that the party relying on foreign law has the burden of showing such law bars production of documents."  BrightEdge Techs., Inc. v. Searchmetrics, GmbH, 14-cv-1009-WHO, 2014 WL 3965062 *2 (N.D. Cal. Aug. 13, 2014) (internal quotation omitted).

Defendants not only fail to provide sworn testimony on this issue, they provide no testimony at all despite the fact that Cochlear Limited is an Australian corporation based in New South Wales and presumably has access to Australian counsel.  Further, there is no discussion as to the likelihood of prosecution under this statute.  See, e.g., Vivendi Universal 2006 WL 3378115 at *3 (noting that while disclosure may violate French law, France had little interest enforcement of their statute) (quoting Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 30 (S.D.N.Y. 1984)).  In fact there is no discussion as to whether a potential violation of Australia's Privacy Act exposes Defendants to prosecution at all, or even a civil or administrative cause of action.  Finally, Plaintiff notes in her opposition that the Australian statute contains an exception for conduct required by the "applicable law of a foreign country."  Australian Privacy Act § 13D(1).  Defendants do not even advise the Court of this

9

exception, let alone whether it applies, instead stating in the margin without citation to authority only that none of the statutory exceptions to the Privacy Act apply here.  For these reasons Defendants' argument again fails to meet its burden of demonstrating that Australia has a national interest outweighing the United States' interest in application of the Federal Rules of Civil Procedure.

In terms of hardship to Cochlear, the Court concludes that there is no more burden here than in any similar case had Defendants' offices been located elsewhere in the United States.  As set forth above, Defendants have failed to establish that responding to Plaintiff's discovery requests would create a meaningful likelihood of any type of prosecution, or even a violation of Australian law in the first instance.  Moreover, while there may be a substantial amount of documents at issue in this case, Defendants have failed to establish that this would not be the case had all the parties been based locally.  Further, and as also set forth above, in the current business climate, the transport and production of documents can be done electronically, limiting much of the costs in terms of time and money.  Accordingly, Defendants have not established a sufficient hardship in responding to Plaintiff's discovery requests to warrant circumvention of the Federal Rules of Civil Procedure in favor of the Hague Convention.

While the parties also argue as to whether Defendants have acted in bad faith during discovery, the Court declines to engage in a substantial analysis of this point given that analysis of the other factors already weighs against application of the Hague Convention for the purpose of responding to Plaintiff's discovery requests.

In sum, a review of the relevant factors establishes that Defendants have failed to meet their burden for applying the Hague Convention in lieu of the Federal Rules of Civil Procedure as to Plaintiff's discovery requests.

*Conclusion*

  For the reasons set forth above, Defendant Cochlear Limited's motion to compel use of the Hague Convention on the Taking of Evidence Abroad [DE 52] is DENIED

Dated: Central Islip, New York
    September 18, 2014    SO ORDERED:


                /s/ Steven I. Locke_____
                Steven I. Locke, USMJ